NO. 07-98-0322-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 28, 2000

_____

RICKY HERNANDEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 97-426278; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before BOYD, C.J., REAVIS, and JOHNSON, JJ.

Our opinion of January 5, 2000, is withdrawn and this opinion is substituted in its place. Our judgment of January 5, 2000, is also withdrawn and judgment affirming the trial court judgment is substituted in its place. TEX. R. APP. P. 50.

Appellant was convicted by a jury of possession with intent to deliver more than four grams but less than 200 grams of cocaine. The jury assessed his punishment at confinement for 25 years and a $6,000 fine. Appellant raises 11 issues. We affirm.

## I. FACTUAL BACKGROUND

On August 10, 1997, an officer from the Lubbock Police Department was dispatched on a domestic dispute involving appellant's alleged assault of his girlfriend. The officer proceeded to the residence and upon entering found a loaded pistol inside a shoe which was next to the sofa where appellant was sleeping. An unloaded shotgun was also discovered. The officer arrested appellant for aggravated assault and searched him. Two plastic bags containing 11 smaller bags of cocaine, weighing 7.29 grams, were found in appellant's front pants pocket.

After placing appellant in the police car, the officer re-entered the residence with appellant's girlfriend and discovered additional items near the sofa, including a shotgun, a pistol, a knife, a set of scales, a plate with a rolled up dollar bill containing white residue, a set of rolling papers, and a bag containing ammunition. Appellant was indicted and convicted for the offense of possession with intent to deliver more than four grams but less than 200 grams of cocaine.

## II. LEGAL AND FACTUAL SUFFICIENCY OF EVIDENCE

By his first and second issues, appellant contends that the evidence was legally and factually insufficient to prove that the substance in the bags in his pocket was cocaine.

When both the legal and factual sufficiency of evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). Legally sufficient evidence supporting a conviction exists if the court, after reviewing the evidence in the light most favorable to the prosecution, determines that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Clewis, 922 S.W.2d at 129; Geesa v. State, 820 S.W.2d 154, 156-57 (Tex.Crim.App. 1991). We should uphold the jury's verdict unless it is irrational or unsupported by more than a "mere modicum" of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

If the evidence is legally sufficient to support the verdict, we proceed with a factual sufficiency review. Clewis, 922 S.W.2d at 133. In our review, we evaluate all the evidence without employing the prism of "in the light most favorable to the prosecution." Id. at 129. We therefore consider all of the evidence, comparing evidence that tends to prove the existence of disputed facts with evidence that tends to disprove such facts. Santellan v. State, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997). We should set aside the verdict only when the factual finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 135. In doing so, we must be

3

mindful that the jury is the sole judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164.

Regarding legal sufficiency, the indictment charged that on or about August 10, 1997, appellant "did then and there intentionally and knowingly possess, with intent to deliver, a controlled substance listed in penalty group one, namely Cocaine, by aggregate weight, including adulterants and dilutants, less than two hundred (200) grams but at least four (4) grams." This charge is pursuant to section 481.112 of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp. 2000). Appellant contends that because no laboratory testing was performed to determine the "purity" of the substance, it is not possible to prove that appellant actually possessed a controlled substance. Thus, appellant reasons, if an adulterant or dilutant affects the chemical activity and makeup of the substance, the substance could be an analogue or precursor of cocaine and should not be considered a controlled substance. Appellant relies on sections 481.123 and 481.112 of the Texas Health and Safety Code, contending that section 481.112 does not apply to an analogue of cocaine.[1]

---

[1]Section 481.123(a) provides that a controlled substance analogue is considered to be a controlled substance listed in Penalty Group 1 or 1-A if the analogue in whole or in part is intended for human consumption and:

(1) the chemical structure of the analogue is substantially similar to the chemical structure of a controlled substance listed in Schedule I or Penalty Group 1 or 1-A; or

(2) the analogue is specifically designed to produce an effect substantially similar to or greater than the effect of a controlled substance listed in Schedule I or Penalty Group 1 or 1-A.

Section 481.123(g) further provides that this section does not apply to: (1) a controlled substance.

Section 481.112 provides in part:

4

An adulterant or dilutant is defined as any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (Vernon Supp. 2000). The State must prove that a controlled substance, plus adulterants and dilutants, weighs at least as much as the minimum weight alleged in the indictment. Reeves v. State, 806 S.W.2d 540, 542 (Tex.Crim.App. 1990). The State is not required to prove that the added adulterants or dilutants did not affect the chemical activity of a controlled substance. Warren v. State, 971 S.W.2d 656, 660 (Tex.App.--Dallas 1998, no pet.); Williams v. State, 936 S.W.2d 399, 405-06 (Tex.App.--Fort Worth 1996, pet. ref'd).

The State presented testimony from James Thomas, an employee of the Texas Department of Public Safety (DPS) in Lubbock. He testified that he had degrees in chemistry and biology, was trained by the DPS laboratory in Austin, was a member of the Southwest Association of Forensic Scientists, and had approximately 13 years experience supervising the Lubbock laboratory. Thomas testified that the bags taken from appellant's pocket were tested at the Lubbock DPS laboratory. The testing revealed that the substance from the bags contained cocaine together with adulterants and dilutants, and

---

(a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1.

\* \* \* \* \*

(d) An offense under Section (a) is a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams.

TEX. HEALTH & SAFETY CODE ANN. (Vernon Supp. 2000).

weighed 7.29 grams. The record does not contain evidence that the substance in question was an analogue of cocaine.

When viewed in the light most favorable to the prosecution, Thomas's testimony is sufficient for us to conclude that a rational trier of fact could have found the existence of all the elements of the crime of possession of a controlled substance, cocaine, in an amount of less than 200 grams but at least four grams, beyond a reasonable doubt. Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2788-89; Geesa, 820 S.W.2d at 156-57. We overrule appellant's first issue.

Regarding factual sufficiency, appellant did not produce any evidence controverting the weight or "purity" of the cocaine in support of his theory challenging the State's evidence. The verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W.2d at 135. We overrule appellant's second issue.

## III. EXTRANEOUS OFFENSES DURING
## THE GUILT OR INNOCENCE PHASE OF TRIAL

By his third issue, appellant contends that the trial court erred in denying his motion for mistrial because of the prosecutor's efforts to introduce evidence that appellant had committed acts of domestic violence. Appellant asserts that the acts of domestic violence were inadmissible under Rule 404(b) of the Texas Rules of Evidence.

6

The State responds that the evidence should be considered "same transaction" contextual evidence, and is therefore admissible because the evidence is closely connected with the offense at trial. The State cites Mayes v. State, 816 S.W.2d 79 (Tex.Crim.App. 1991). Mayes notes that "same transaction" contextual evidence should be admitted "[t]o show the context in which the criminal act occurred . . . under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the act so that they may realistically evaluate the evidence." Id. at 86. The State also asserts that Mayes supports admission of the type of evidence complained of by appellant where several crimes are intermixed, or blended with one another, or so connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, by any one of them cannot be given without showing the others. See id. at 86, n.4, (quoting Nichols v. State, 97 Tex.Crim. 174, 260 S.W. 1050 (1924)).

Generally, evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. TEX. R. EVID. 404(b). However, extraneous offense evidence is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Id. The admissibility of extraneous offenses is determined by a two-part test. First, the trial court must determine whether the extraneous offense is relevant to a material, contested issue in the case other than the defendant's character. Montgomery v. State, 810 S.W.2d 372, 387-89 (Tex.Crim.App. 1990). Second, the

7

relevancy value of the evidence must outweigh its inflammatory or prejudicial potential. Id. at 388. We review the trial court's actions regarding the admissibility of such evidence under an abuse of discretion standard. Id. at 391. As long as the trial court's ruling was at least within the "zone of reasonable disagreement," an appellate court will not find error. Id.

During the arresting police officer's trial testimony, the officer referred to appellant's girlfriend as a "victim," and the prosecutor questioned the officer about the "scene of domestic violence." Appellant made objections on the basis of Rule 404(b), and on both occasions, the trial court sustained the objection. The court also instructed the jury to disregard the "victim" characterization and the subsequent question by the prosecutor concerning domestic violence. The trial court denied appellant's two requests for a mistrial.

Without applying the two-part test set out in Montgomery, we note that in the two instances complained of by appellant, he received all the relief requested except for a mistrial. The trial court sustained the objections and instructed the jury to disregard the testimony and question.

Error in the admission of improper testimony is usually cured by the trial court's instruction to the jury to disregard, except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character to suggest the impossibility of withdrawing the impression produced in their

8

minds. Coe v. State, 683 S.W.2d 431, 436 (Tex.Crim.App. 1984) (quoting Koller v. State, 518 S.W.2d 373, 375 (Tex.Crim.App. 1975)). The question and testimony complained of are not of such character as to suggest the impossibility of withdrawing their impression from the minds of the jury. Any possible error was cured by the trial court's instruction to the jury. Accordingly, we overrule appellant's third issue.

Through the testimony of the arresting police officer, a pistol and a shotgun were admitted into evidence. The weapons were found near appellant at the time of his arrest. Another shotgun, a .22 caliber pistol, and a knife were recovered after appellant's arrest and were also admitted into evidence. By his fourth and fifth issues, appellant contends that the trial court erred by permitting the prosecutor to elicit testimony that appellant was in possession of the guns and a knife at the time of his arrest. He claims the evidence was admitted in violation of Rules 404(b) and 403 of the Texas Rules of Evidence.

In determining relevance, as required by the first part of the Montgomery test, evidence is relevant if it tends to make more or less probable an elemental fact or inferentially supports or undermines an elemental fact. Montgomery, 810 S.W.2d at 387. The arresting officer testified that the items recovered after appellant's arrest were in close proximity to a set of scales on the floor. In addition, an eight-year officer with the Narcotics Division of the Lubbock Police Department testified, as an expert for the State, that in his experience, guns are commonly associated with people who traffic in drugs. Further, evidence of possession of a weapon by a defendant when an offense is committed is usually relevant as a circumstance of the offense because arguably the weapon is

9

intended to be used, exhibited, or simply possessed for protection or threat during the offense. <u>Couret v. State</u>, 792 S.W.2d 106, 108 (Tex.Crim.App. 1990). The presence of guns and a knife bears relevance at least to the issues of appellant's plan or intent to deliver drugs. The trial court did not abuse its discretion in admitting the evidence over appellant's Rule 404(b) objection.

When evidence is evaluated for admissibility under the second part of the <u>Montgomery</u> test, a presumption favors admissibility. <u>Montgomery</u>, 810 S.W.2d at 389. The evidence of the guns and knife was so closely connected with the events of the arrest that it was admissible to aid the jury in understanding the circumstances of the charged crime. The evidence was "same transaction" evidence in nature, and the trial court did not abuse its discretion in determining that the probative value of the evidence exceeded its prejudicial effect. Accordingly, we overrule appellant's fourth and fifth issues.

## IV. JURY ARGUMENT

In his sixth issue, appellant contends that the trial court erred in denying his request for a mistrial because the State made a jury argument outside the record during the guilt or innocence stage of trial:

> Prosecutor: Now, if you're out to sell drugs, just like selling anything else. You're going to sell shirts. You've got to have some smalls. You've got to have some larges. Well, what do you have here? We've got some smalls. We've got some larges. These are exactly what Dale Gregg sees all the time in years of experience about drug trafficking in Lubbock, exactly right there.

10

> Ladies and gentlemen of the jury, these witnesses know exactly what they're talking about. It wasn't Dale Gregg's thought that maybe this man had the intent to deliver. He was sure, no doubt, somebody that does this is out to deliver drugs.

Defense: Your Honor, I'm going to object. Officer Gregg never said that this defendant, his opinion, had the intent to deliver.

The trial court sustained the objection and instructed the jury to disregard the comment. Appellant's request for a mistrial was denied.

Jury arguments must fall into one of four general areas: 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to the argument of opposing counsel, and 4) plea for law enforcement. Walker v. State, 664 S.W.2d 338, 340 (Tex.Crim.App. 1984); Alejandro v. State, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973). It is improper for a prosecutor to call upon the jury to speculate as to activities of the accused that are not shown nor inferable from the evidence. Walker, 664 S.W.2d at 340.

Although the State's expert did not expressly state that he had "no doubt" regarding appellant's intent to deliver cocaine, the record reflects a portion of his testimony as follows:

Q: If--for example, let's say somebody had in their possession over seven grams of cocaine packaged as you've seen in State's Exhibits 5 and 6, would you believe that person has that for personal use?

A: No.

Q: In your opinion, why would someone have drugs in that amount packaged that way?

A: To resell.

11

Q:      Are those particular sizes of packaging, is that common sizing for drug dealing in Lubbock, Texas?

A:      Sure. Yes.

Q:      Now, are--is it common to deal cocaine and package it using the corners of plastic baggies?

A:      Yes.

When considering the entire record, it is not unreasonable to infer that the expert believed appellant possessed the cocaine with the intent to deliver; therefore, the argument was not improper. Even if we assume that the argument was improper, however, the argument is not so inflammatory as to be incurable. The trial court's instruction to the jury cured any error. Carter v. State, 614 S.W.2d 821, 823 (Tex.Crim.App. 1981). Appellant's sixth issue is overruled.

In his tenth issue, appellant contends that during the punishment phase of trial, the trial court erred in overruling his request for a mistrial because the State made an improper plea for law enforcement. Appellant's complaint is based on the following jury argument and objection:

Prosecutor:   You know, I was thinking about voir dire on the first day of this trial and what the general consensus of the people that attended [sic] and were a part of the jury pool. The overwhelming majority of people expressed the idea that protecting society ---

Defense:      Your Honor, I'm going to object to this argument; one, being outside the record; two, being an improper plea as to community expectations.

The trial court sustained the objection and instructed the jury to disregard the comment. Appellant's request for a mistrial was denied.

The State may make a proper plea for law enforcement, including arguing the relationship between the jury's verdict and the deterrence of crime in general, arguing that juries should deter specific crimes by their verdicts, and arguing the impact of the jury's verdict on the community. Borjan v. State, 787 S.W.2d 53, 55-56 (Tex.Crim.App. 1990). However, the State is not permitted to argue that the community or any particular group in the community demands or expects a verdict of guilty or a specific punishment. Id. at 56.

Prior to defense counsel's objection, the prosecutor made an incomplete statement about what the majority of people expressed during voir dire prior to jury selection, and there is nothing in the record reflecting specific demands or expectations of the community. In Cortez v. State, 683 S.W.2d 419, 421 (Tex.Crim.App. 1984), the court quoted numerous cases where juries were improperly asked to follow community expectations, rather than the law. None of the language condemned by Cortez was used in this instance. If we assume that the argument was improper, the argument is not so inflammatory as to be incurable. The trial court's instruction to disregard cured any error. Carter, 614 S.W.2d at 823. Appellant's tenth issue is overruled.

In his eleventh issue, appellant contends that during the punishment phase of trial, the trial court erred in overruling his objection after the State made a harmful jury argument

13

that invited the jurors to speculate about matters outside of the record. Appellant's complaint is based on the prosecutor's argument as follows:

> [Defense counsel] wants to talk about how, well, no one was shot, no one was killed, he wasn't caught actually dealing any drugs. Do not reward this man because the police officers happened to stop him before something worse happened.
>
> You know, what is somebody thinking, what are their intentions when they have something like this around in their drug business?

Prior to the prosecutor's remark, defense counsel had made the following argument to the jury:

> You can take into consideration this is a nonviolent crime. We're not talking about a murder where someone's life has been taken. We're not talking about aggravated assault where somebody has been seriously injured. We're not talking about a sexual assault or an aggravated assault. And I think you need to keep that in prospective [sic] for this particular case.

Based on this record, it would not be unreasonable to infer appellant's intent to use the guns in the course of dealing drugs, if necessary. Guns are designed to shoot projectiles, which in turn are designed to cause damage to what they strike. The prosecutor's argument is not an unreasonable inference to be drawn from the evidence and thus is not improper. Walker, 664 S.W.2d at 340. Further, the prosecutor's remark was in response to defense counsel's argument and was not improper. Id.; Alejandro, 493 S.W.2d at 231. Appellant's eleventh issue is overruled.

## V. EVIDENCE OF EXTRANEOUS OFFENSE DURING PUNISHMENT PHASE OF TRIAL

14

In his seventh, eighth, and ninth issues, appellant contends that the trial court erred during the punishment phase of trial by admitting evidence of an extraneous offense involving appellant's possession of cocaine. Appellant claims the evidence was obtained as the fruit of a traffic stop in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution, and admitted into evidence in violation of his rights under the Constitutions. Appellant also contends that admission of the evidence was error because Article 38.23 of the Texas Code of Criminal Procedure requires exclusion of evidence obtained in violation of any provisions of the laws or Constitution of Texas or of the laws or Constitution of the United States.

During presentation of evidence on punishment, the State introduced evidence obtained as a result of a traffic stop of a vehicle in which appellant was a passenger. The stop occurred on September 11, 1997, at 3:03 a.m., in the 5400 block of the northbound access road to Interstate Highway 27 in Lubbock. The police officer who stopped the vehicle in which appellant was a passenger and who arrested appellant gave no reason for the stop other than the fact that the vehicle had its lights on bright:

> Prosecutor:  And why did you stop this vehicle?
> Witness:     For driving with its lights on bright.

After he stopped the vehicle, the officer shined his flashlight into the vehicle. He did not see anything suspicious. Because the officer observed appellant making "furtive gestures" like he might be placing something in the floorboard or under the car seat, or

15

reaching for something in the floorboard or under the car seat, the officer was suspicious that appellant might have a weapon. Based on his suspicion, he requested appellant to exit the vehicle. The officer saw appellant reach into his front pants pocket and toss a "little plastic baggy" on top of a jacket in the backseat floorboard. The officer testified that the baggy was not located on top of the jacket when he first shined his flashlight into the vehicle. The baggy was recovered and appellant was arrested. The State's expert testified that the bag contained cocaine, which, including adulterants and dilutants, weighed .58 grams.

In responding to appellant's issues, the State acknowledges that when a search or seizure occurs without a warrant, the burden of proof is on the State to prove the reasonableness of the search or seizure. Referring to the stop of the vehicle as an investigatory stop, the State further acknowledges that to justify the stop, the officer must have possessed specific articulable facts which could reasonably have led him to suspect that the vehicle or an occupant of the vehicle had been, was, or soon would be involved in criminal activity. The State refers us to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). The State attempts to justify the stop by asserting that failure to dim the headlights of an automobile to oncoming traffic violates TEX. TRANSP. CODE ANN. § 547.333(c) (Vernon 1999).[2] Thus, the State reasons, because a vehicle may be stopped and detained for a

---

[2]Section 547.333(c) provides:
(c) A person who operates a vehicle on a roadway or shoulder shall select a distribution of light or composite beam that is aimed and emits light sufficient to reveal a person or vehicle at a safe distance ahead of the vehicle, except that:

16

traffic violation,[3] the vehicle in which appellant was a passenger was legally stopped. The State also cites section 547.305(a) of the Transportation Code as "relevant" to the legality of the stop. Section 547.305(a) provides that a motor vehicle light with a beam brighter than 300 candlepower shall be directed so that no part of the beam strikes the roadway more than 75 feet from the vehicle. However, the State does not reference evidence in the record to support its position with respect to section 547.305(a), nor does the State present argument showing how the stop was a violation of, and therefore justified by, such section.

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. Elkins v. United States, 364 U.S. 206, 222, 102 S.Ct. 1319, 4 L.Ed.2d 1669 (1960); Davis, 947 S.W.2d at 244. Evidence obtained by a search and seizure in violation of the Constitution is inadmissible at a criminal trial of the person whose constitutional rights were violated. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Texas courts follow the guidance of the United States Supreme Court when interpreting the federal constitution and the rights thereunder. State v. Guzman, 959 S.W.2d 631, 633 (Tex.Crim.App. 1998).

---

(1) an operator approaching an oncoming vehicle within 500 feet shall select:
    (A) the lowermost distribution of light or composite beam, regardless of road contour or condition of loading; or
    (B) a distribution aimed so that no part of the high-intensity portion of the lamp projects into the eyes of an approaching vehicle operator; and
(2) an operator approaching a vehicle from the rear within 300 feet may not select the uppermost distribution of light.

[3]McVickers v. State, 874 S.W.2d 662, 664 (Tex.Crim.App. 1993).

Article I, Section 9 of the Texas Constitution recognizes the right of the people to be secure from unreasonable searches and seizures. Hulit v. State, 982 S.W.2d 431, 434 (Tex.Crim.App. 1998). The test for whether a search or seizure violates Article I, Section 9 of the Texas Constitution is whether, viewing the totality of the circumstances and after considering the public and private interests that are at stake, the search or seizure was unreasonable. Id. at 436, 438. The Texas Constitution does not require exclusion of physical evidence seized in violation of Article I, Section 9. Welchek v. State, 93 Tex. Crim. 271, ___, 247 S.W. 524, 529 (1922).

Article I, Section 9 of the Texas Constitution does not encompass a more stringent standard than the Terry standard which is used to evaluate a temporary investigative stop of a vehicle or its occupants under the Fourth Amendment to the federal constitution. Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997). Because the Fourth Amendment of the federal constitution affords appellant as much or more protection than Article I, Section 9 of the Texas Constitution, we analyze appellant's complaints under the federal Terry standard. If the stop of the vehicle and subsequent actions of the officer are not in violation of the federal Fourth Amendment and the Terry standards, they do not violate Article I, Section 9 of the Texas Constitution. Rhodes, 945 S.W.2d at 117.

An investigatory stop of a vehicle or person by the police does not violate the Fourth Amendment if articulable facts support a reasonable suspicion that the vehicle or person stopped has been or is involved in criminal activity. United States v. Cortez, 449 U.S. 411, 421-22, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); United States v. Brignoni-Ponce, 422 U.S.

18

873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Sanders v. State, 992 S.W.2d 742, 748-49 (Tex.App.--Amarillo 1999, pet. ref'd). A "reasonable suspicion" exists if a reasonable person in the position of the officer making the stop could suspect that the vehicle or person stopped has been or is connected to criminal activity. United States v. Cortez, 449 U.S. at 421-22; Sanders v. State, 992 S.W.2d at 748-49. The subjective thoughts and intentions of the officer making the stop are not determinative of whether the articulable facts support a reasonable suspicion. Whren v. United States, 517 U.S. 806, ___, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The Fourth Amendment standard is an objective standard based upon the record presented. Ornelas v. United States, 517 U.S. 690, 116 S. Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996).

Generally, a passenger does not have a possessory interest in an automobile and therefore lacks standing to complain of its search because there is no infringement of his expectation of privacy. See Rakas v. Illinois, 439 U.S. 128, 148-49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). A vehicular stop, however, results in the seizure of both the driver and the passenger. Whren, 517 U.S. at ___, 116 S.Ct. at 1772; United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993), *cert. denied*, 510 U.S. 1204, 114 S.Ct. 1322, 127 L.Ed.2d 671 (1994). Thus, an automobile stop is subject to the constitutional requirement that it not be unreasonable under the circumstances. Whren, 517 U.S. at ___, 116 S.Ct. at 1772. The passenger of a stopped automobile has standing to challenge his or her seizure as unconstitutional. Roberson, 6 F.3d at 1091; see Lewis v. State, 664 S.W.2d 345, 348 (Tex.Crim.App. 1984). If a traffic stop was unlawful, evidence resulting

from the stop and any subsequent search is tainted and inadmissible. Roberson, 6 F.3d at 1092; Robinson v. State, 866 S.W.2d 649, 650 (Tex.App.--Houston [14th Dist.] 1993, pet. ref'd); see Mapp, 367 U.S. at 655.

The State bears the burden of proving the legality of warrantless seizures, warrantless searches and warrantless arrests. McVickers, 874 S.W.2d at 664. A Fourth Amendment seizure occurs when a police officer stops the freedom of movement of a person through intentionally-applied actions. Id. An officer may lawfully stop and detain a vehicle when the officer has probable cause to believe a traffic violation has occurred. Whren, 517 U.S. at ___, 116 S.Ct. at 1772; United States v. Shabazz, 993 F.2d 431, 435 (5th Cir. 1993); Garcia v. State, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992). A traffic violation is committed when a vehicle's headlights are not appropriately dimmed to oncoming traffic or to another vehicle being approached from the rear. TEX. TRANSP. CODE ANN. § 547.333(c) (Vernon 1999).

The standard of review on appeal, and therefore the amount of deference we afford to the trial court's rulings, generally is determined by which judicial actor is in a better position to decide the issue. Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); Guzman v. State, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). Appellate courts afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the trial court's findings are based on an evaluation of credibility and demeanor. Id. at 89; See Ornelas, 517 U.S. 690,__, 116 S.Ct. at 1663. Appellate courts afford the same amount of deference to trial courts' rulings on application

20

of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. Guzman, 955 S.W.2d at 89. As to the foregoing two categories of rulings, we view the record and evidence in the light most favorable to the trial court's ruling. Id. For purposes of Fourth Amendment analysis we give appropriate deference to the trial court's determination of historical facts, but we review the decision of the trial court *de novo* as to whether the historical facts, viewed from the standpoint of an objectively reasonable person so situated as was the police officer, amount to "reasonable suspicion" that the vehicle or a person in it has, is, or will be, engaged in criminal activity. See Ornelas, 517 U.S. at ___, 116 S.Ct. at 1661-62; Guzman, 955 S.W.2d at 89.

There is no evidence in the record establishing that the vehicle in which appellant was a passenger failed to dim its headlights to oncoming traffic, nor that the vehicle failed to dim its lights when approaching another vehicle from the rear. The record contains no evidence of whether the access road on which appellant's vehicle was stopped had multiple traffic lanes or had only a single lane. No evidence was presented as to whether the vehicle in which appellant was riding had passed other vehicles going in the opposite direction, or whether it was following other vehicles. The record does not show whether the arresting officer was stopped beside the roadway when he observed the vehicle in which appellant was riding to have its headlights on bright, whether he drove up behind the vehicle and observed the bright headlights, whether he passed the vehicle going in the opposite direction on the access roadway, or whether he was perhaps on the interstate

21

highway when he observed the vehicle's bright lights. The State's position that a traffic violation justified the officer's stop of the vehicle in which appellant was riding is not valid. Further, for purposes of justifying a Fourth Amendment investigatory stop, the fact that an automobile is being operated on an access road to an interstate highway at 3:00 a.m. with its headlights on bright is not sufficient to raise a reasonable suspicion that it or one of its occupants is, has been, or soon will be, involved in criminal activity.

Because the vehicle was not being operated in violation of a traffic law, and the State did not prove that the officer possessed articulable facts which could create a reasonable suspicion that the vehicle or one of its occupants was, had been, or soon would be, involved in criminal activity, the traffic stop of the vehicle and the resultant seizure of appellant violated appellant's rights under the Fourth Amendment to the United States Constitution. The evidence that appellant possessed cocaine was obtained in violation of appellant's Fourth Amendment rights. The evidence was inadmissible on the basis of the exclusionary rule of Mapp and its progeny, and on the basis of TEX. CRIM. PROC. CODE ANN. art. 38.23(a) (Vernon 1979 & Supp. 2000). The trial court erred in admitting the evidence.

Having concluded that the trial court erred in admitting evidence derived from a violation of appellant's Fourth Amendment rights, we must determine whether the error requires reversal of the judgment as to punishment. Texas Rule of Appellate Procedure 44.2 provides the standard by which we are guided.

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse the judgment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). A constitutional error within the meaning of Rule 44.2(a) is an error that directly offends against the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply. Tate v. State, 988 S.W.2d 887, 890 (Tex.App.--Austin 1999, pet. ref'd). With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required. Id. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b).

Certain federal constitutional errors labeled by the United States Supreme Court as "structural" errors[4] require reversal of the case without consideration of whether the error caused harm. See Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). Such cases are categorically immune from harmless error review. Fulminante, 499 U.S. at 309-10; Cain, 947 S.W.2d at 264. Additionally, if the effects of an error in a particular case defy harmless error analysis or the data is insufficient to conduct a meaningful harmless error analysis, the error will not be proven harmless, Fulminante, 499 U.S. at 309-10; Cain, 947 S.W.2d at 264, whether the error is constitutional or non-constitutional. See Heard v. State, 995 S.W.2d 317, 321-22 (Tex.App.--Corpus Christi 1999, pet. ref'd). However,

---

[4]See Gonzales v. State, 994 S.W.2d 170, 171 n.4 (Tex.Crim.App. 1999) for a list of classes of cases in which the Supreme Court has found "structural" errors.

23

the erroneous admission of evidence obtained in violation of Fourth Amendment rights has not been declared by the Supreme Court to be a "structural" error, see Gonzales v. State, 994 S.W.2d 170, 171 n.4 (Tex.Crim.App. 1999), nor is this the type of record which defies harmless error analysis for the error in question. See Heard, 995 S.W.2d at 321-22. Therefore, we proceed to a harmless error analysis pursuant to Rule 44.2.

We first determine if the error in admitting evidence was constitutional error as contemplated by Rule 44.2(a). In Mapp, the Supreme Court held that the federal constitution requires that evidence obtained in violation of an accused's Fourth Amendment right to privacy be excluded from trial. Mapp, 367 U.S. at 655. Various opinions of the Court and of individual justices subsequent to Mapp have posited that the exclusionary rule which was explicitly held to be of constitutional origin by Mapp was not necessarily of such genesis. For example, in United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Supreme Court stated that the exclusionary rule is a judicially-created means of deterring illegal searches and seizures. In Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court considered whether state prisoners making claims that they were convicted because evidence procured by unlawful searches and seizures was admitted at their trials should be allowed to assert a constitutional violation claim in federal habeas corpus proceedings. The Court reviewed the development of the exclusionary rule which was made applicable to the states by Mapp. Stone, 428 U.S. at 482-84. At the outset of its review the Court noted that the exclusionary rule was a judicially-created means of effectuating the rights secured by

24

the Fourth Amendment and that prior to Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), no barrier existed to the introduction in criminal trials of evidence obtained in violation of the Amendment. Stone, 428 U.S. at 482. The Court also noted that in Mapp only four justices adopted the view that the Fourth Amendment itself requires exclusion of unconstitutionally-seized evidence in state criminal trials; that Justice Douglas concurred; and that Justice Black concurred on the basis that the Fourth Amendment alone was not sufficient basis for the exclusionary rule, but that the rule emerged when the Fourth and Fifth Amendments were considered together. Id. at 484 n.21. The Court then forthrightly stated that "Post-Mapp decisions have established that the [exclusionary] rule is not a personal constitutional right." Id. at 486.

Language in the recent decision of Pennsylvania Bd. of Probation and Parole v. Scott, __U.S.__, 118 S.Ct. 2014, __ L.Ed.3d__(1998) directly addresses the issue which we must answer in determining whether the admission of the illegally-seized evidence at appellant's trial was federal constitutional error as referred to by Rule 44.2(a). In Scott, the Court considered whether the rule excluding evidence seized in violation of the Fourth Amendment applies in state parole revocation hearings. The Court held that the rule does not so apply. In beginning its discussion of law surrounding the issue, the Court succinctly and clearly stated its position on the question now before us: "We have emphasized repeatedly that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." __ U.S. at __, 118 S.Ct. at 2019. We conclude

25

that the trial court's error in admitting evidence obtained in violation of appellant's Fourth Amendment rights did not directly offend the United States Constitution, was not required by the Constitution itself, and therefore was not federal constitutional error for purposes of Rule 44.2(a).  See Tate, 988 S.W.2d at 890.

As we have previously noted, the Texas Constitution does not require exclusion of physical evidence seized in violation of Article I, Section 9.  Welchek v. State, 93 Tex. Crim. 271,__, 247 S.W. 524, 529 (1922).  Even if the cocaine had been obtained from appellant in violation of his rights under the Texas Constitution, a question we do not decide, the admission of the evidence at trial would not have been Rule 44.2(a) constitutional error based on its being a direct offense to, or exclusion of the evidence being required by, the Texas Constitution.  See Tate, 988 S.W.2d at 890.

Because the error in admitting the evidence was not constitutional error, we use the standard of Rule 44.2(b) to determine whether the error warrants reversal.  Under Rule 44.2(b) an error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict.  King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).  A criminal conviction will not be reversed for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.  See Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

26

The record shows that appellant was in possession of two plastic bags containing smaller bags of cocaine. In the residence where appellant was sleeping when he was arrested, the police found both loaded and unloaded guns, ammunition, a knife, scales and other obvious drug paraphernalia. Testimony was given to the effect that drugs packaged like those seized from appellant were commonly part of drug dealing activities. During the punishment phase of trial, the State produced evidence of other offenses by appellant in addition to evidence of his cocaine possession. The other offenses included a Class A misdemeanor assault offense, three Class B misdemeanor theft offenses, a Class A misdemeanor offense of unlawfully carrying a weapon, and a third-degree felony offense of burglary of a vehicle. Approximately one and one-half years before his arrest on the charges for which he was on trial, appellant had been sentenced to five years in prison, probated for five years. During final summation, the prosecutors reminded the jury of how recently appellant appeared in court for sentencing for another crime and how little he seemed to be affected by his experience. Evidence of an arrest for drug possession occurring after the date of the crime for which appellant was on trial could have been very important to a jury in determining appellant's sentence. We note, however, that in final summation appellant's counsel argued to the jury that the cocaine possessed by appellant was illegally seized and that the court's charge instructed them not to consider such evidence if the jury found that the evidence was illegally obtained. The possible punishment range for appellant's crime was confinement for five years to ninety-nine years and a fine of up to ten thousand dollars. The prosecutors urged the jury to assess a minimum of forty-five years confinement as punishment. Yet the jury assessed only

27

twenty-five years confinement and a fine of $6,000. Upon this record we conclude that the effect of the trial court's error in admitting the illegally-obtained evidence was not substantial and injurious, but was slight, at most, and therefore must be disregarded. TEX. R. APP. P. 44.2(b).

The judgment is affirmed.


Phil Johnson
Justice


Publish.