**Ricky HERNANDEZ, Appellant,**

v.

**The STATE of Texas.**

No. 861-00.

Court of Criminal Appeals of Texas.

Nov. 14, 2001.

Floyd D. Holder, Jr., Lynette Hammond, Lubbock, for Appellant.

William C. Sowder, DA, Lubbock, for State.

PRICE, J., delivered the opinion of the Court, in which MEYERS, WOMACK, JOHNSON, and HOLCOMB, J.J., join. COCHRAN, J., joins with a note.

In this case, we granted review to determine whether the court of appeals erred in holding that the admission of evidence obtained in violation of the Fourth Amendment is non-constitutional error. The Supreme Court has concluded that the Fourth Amendment requires exclusion of evidence obtained in violation thereof and has held that requirement applicable to the states by the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Therefore, we hold that the proper harm analysis in this case is the constitutional one of Rule of Appellate Procedure 44.2(a).

The appellant was indicted for possession with intent to deliver cocaine. The jury convicted the appellant. Tex. Health & Safety Code § 481.112. During the punishment phase of the trial, the appellant objected to the admission of evidence seized during an unlawful traffic stop. The trial court overruled the appellant's objection.

On direct appeal, the appellant complained that the trial court erroneously admitted the evidence. The court of appeals held that the evidence should have been excluded because the traffic stop that led to the evidence's seizure violated the Fourth Amendment to the United States Constitution. *Hernandez v. State*, 13 S.W.3d 492, 506–07 (Tex.App.—Amarillo 2000). The court of appeals concluded that the error was non-constitutional error under Rule of Appellate Procedure 44.2 [1]

---

1. Rule 44.2 reads:

(a) Constitutional Error. If the appellate record in a criminal case reveals constitu-

because it "did not directly offend the United States Constitution, was not required by the Constitution itself, and therefore was not a federal constitutional error for purposes of 44.2(a)." *Id.* at 508. We granted review to decide which harm analysis should apply to the erroneous admission of evidence obtained in violation of the Fourth Amendment.

*Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), guides us to the conclusion that the constitutional standard must apply. In that case, the Supreme Court found that the petitioner's Fourth Amendment rights were violated in the state criminal trial. *Id.* at 550, 88 S.Ct. 1788. Having found a violation, and after conducting a harmless error analysis under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court concluded that the error was not harmless beyond a reasonable doubt. *Bumper,* 391 U.S. at 550, 88 S.Ct. 1788. Justices Black and White dissented to the majority's conclusion that the search was illegal, but both agreed that the proper harm analysis would be the constitutional standard in *Chapman. Id.* at 560, 562, 88 S.Ct. 1788 (Black, J., dissenting) (White, J., dissenting).

Since the Supreme Court's application of the constitutional error standard of harm in *Bumper,* the Court has held in *certain* contexts that the Fourth Amendment exclusionary rule does not apply in all proceedings or against all persons. *See, e.g., Pennsylvania Bd. of Probation and Parole v. Scott,* 524 U.S. 357, 369, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (declining to extend the Fourth Amendment exclusionary rule to parole revocation proceedings);

*Stone v. Powell,* 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (holding that the Constitution does not require state prisoners be granted federal habeas relief on the ground that evidence obtained in violation of the Fourth Amendment was admitted at trial); *United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (declining to extend the Fourth Amendment exclusionary rule to grand jury proceedings). The Amarillo Court of Appeals relied on these cases for its conclusion that the error in this case must be non-constitutional. But the cases neither explicitly nor implicitly overrule the Court's unanimous conclusion in *Bumper* that the *Chapman* standard applies to a trial court's erroneous failure to exclude evidence obtained in violation of the Fourth Amendment.

Moreover, the Supreme Court recently reversed a Fourth Circuit decision in which that court of appeals upheld a federal law purporting to overrule *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). The Supreme Court noted the court of appeals relied on "the fact that we have created several exceptions to *Miranda's* warnings requirement and that we have repeatedly referred to *Miranda* warnings as 'prophylactic' and 'not themselves rights protected by the Constitution.'" *Id.* at 437–38, 86 S.Ct. 1602 (citations omitted). The Supreme Court reversed that court of appeals though it conceded "there is language in some of our opinions that supports the

---

tional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

view taken by that court." *Id.* at 438, 86 S.Ct. 1602.

The Supreme Court resolved the case, in part, on the basis that it does not possess the authority to supervise state courts. *Id.* (citing *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). Constitutional rights and restrictions on government do not contain express exclusionary rules, but the exclusionary rules are constitutionally based because they derive from the liberties and restrictions contained in the amendments. In other words, the Supreme Court can enforce *Miranda's* exclusionary rule because the rule is constitutionally based. Specifically the Court explained "[w]ith respect to proceedings in state courts, our 'authority is limited to enforcing the commands of the United States Constitution.' " *Id.* (quoting *Mu'Min v. Virginia,* 500 U.S. 415, 422, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)).

The same analysis applies in the instant case. Without a constitutional basis, the Supreme Court would not have authority to make the Fourth Amendment exclusionary rule applicable to the states. As a result, the harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment must be Rule 44.2(a)'s constitutional standard.

We reverse the judgment of the Court of Appeals and remand for a harm analysis pursuant to Rule of Appellate Procedure 44.2(a).

COCHRAN, J., joins with note.

1. Rule 44.2(a) states that, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a).

KELLER, P.J., filed a dissenting opinion, in which KEASLER and HERVEY, J.J., join.

COCHRAN, J., joins the majority opinion and adds the following note:

I agree that the *Chapman* harmless error standard applies to violations of the Fourth Amendment. I question, however, whether the federal exclusionary rule necessarily applies at the punishment stage. *See, e.g., United States v. Ryan,* 236 F.3d 1268 (10th Cir.2001).

KELLER, Presiding Judge, filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

At sentencing, the State offered evidence of an extraneous offense involving appellant possessing cocaine. Appellant objected unsuccessfully, claiming that this evidence was obtained in violation of, *inter alia,* the Fourth Amendment to the United States Constitution and that the exclusionary rule barred its admission. We have been asked to determine whether the erroneous admission of evidence obtained in violation of the Fourth Amendment amounts to constitutional error subject to the provisions of Texas Rule of Appellate Procedure 44.2(a).[1] I would hold that it does not, and is instead non-constitutional error governed by Rule 44.2(b).[2]

## I.

In August of 1997, a Lubbock police officer was summoned to a private residence to investigate a domestic dispute involving appellant and his girlfriend. Upon arrival inside the residence, the offi-

2. Rule 44.2(b) states that, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b).

cer found an unloaded shotgun as well as a loaded pistol inside a shoe that was lying next to a sofa where appellant was sleeping. The officer arrested appellant for aggravated assault of the girlfriend and conducted a search incident to that arrest, during which the officer discovered two plastic bags in the front pocket of appellant's pants. The bags contained eleven smaller bags of cocaine weighing 7.29 grams. The officer placed appellant in the police car and returned to the residence with the girlfriend. Once inside, the officer found more evidence near the sofa, including another shotgun, another pistol, a set of scales, a plate holding a rolled dollar bill that contained white residue, a set of rolling papers, and a bag of ammunition. The State charged appellant with, and a jury convicted him of, possession with intent to deliver more than four but less than 200 grams of cocaine.

At the sentencing phase, the State introduced evidence that was obtained during a September 11, 1997 traffic stop of a vehicle in which appellant was a passenger. The officer who conducted the stop testified that his only reason for doing so was because the vehicle "was driving with its lights on bright." During the stop, the officer shined a flashlight into the vehicle and, though he did not initially see anything suspicious, saw appellant making "furtive gestures." The officer interpreted these gestures as an effort by appellant to either place or reach for something on the floorboard or under the seat. The officer then asked appellant to exit the vehicle and saw appellant toss a "little baggy"

from his front pants pocket onto a jacket on the backseat floorboard—a baggy that was not, according to the officer, located on the jacket when the officer first looked into the vehicle. After seizing the baggy, the officer arrested appellant. The State's expert witness testified that the bag seized during this stop contained cocaine weighing .58 grams, including adulterants and dilutants. Appellant objected twice to this evidence, claiming that it was obtained in violation of the federal and state Constitutions and that Article 38.23 of the Code of Criminal Procedure[3] precluded its admission. The trial court admitted the evidence and appellant was sentenced to twenty-five years in prison and a $6,000 fine.

The Court of Appeals determined that the trial court erred in admitting the evidence obtained during the vehicle search.[4] In concluding that the search violated the Fourth Amendment, the court found that "the vehicle was not being operated in violation of a traffic law, and the State did not prove that the officer possessed articulable facts which would create a reasonable suspicion that the vehicle or one of its occupants was, had been, or soon would be, involved in criminal activity."[5] Then the court explained that the Supreme Court had "succinctly and clearly stated its position on the question now before us:"[6] the use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution.[7] Therefore, the court reasoned, admission of such evidence, though error, did not directly offend the

---

**3.** "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CRIM. P.CODE Art. 38.23(a).

**4.** *See Hernandez v. State,* 13 S.W.3d 492 (Tex. App.—Amarillo 2000).

**5.** *Id.* at 506.

**6.** *Hernandez,* 13 S.W.3d at 508.

**7.** *See Scott,* 524 U.S. at 362, 118 S.Ct. 2014.

Constitution, was not required by the Constitution itself, and was not constitutional error. The court determined that the trial court's error was therefore subject to the provisions of Rule 44.2(b) and that the error had no more than a slight effect on the jury's sentencing determination. The court affirmed.

In his petition to this Court, appellant claims that the Court of Appeals incorrectly determined that the error was non-constitutional. Rather, he argues, the Fourth Amendment requires the exclusion of evidence obtained in violation of its terms. Thus, failure to adhere to the exclusionary rule amounts to constitutional error subject to the provisions of Rule 44.2(a) and requires the State to show that the error was harmless beyond a reasonable doubt. We granted appellant's petition to decide this important question of federal constitutional law and criminal procedure.

## II.

The Fourth Amendment to the United States Constitution provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[8]

Nothing in the text explicitly commands the exclusion of evidence obtained in violation of these terms. Nothing, moreover, in the remaining amendments concerning the conduct of criminal trials, or in the Fourteenth Amendment, compels the exclusion of evidence obtained from an unreasonable search. Indeed, colonial history and that of the framing of the Bill of Rights indicate that those who crafted the Fourth Amendment were concerned primarily with enshrining in our fundamental law certain protections against the kind of generalized, arbitrary, and oppressive searches that the old general warrants and writs of assistance produced.[9] Relying upon their experience, the Fourth Amendment's framers, ever cognizant of the dangers that loose, general searches posed to liberty and tolerable civil order, accordingly imported and enhanced the protections that the common law afforded.[10] The debate over the Fourth Amendment thus focused pri-

---

8. U.S. Const. amend. IV.

9. *See* Tracey Maclin, *The Complexity of the Fourth Amendment: A Historical Review*, 77 B.U. L.Rev. 925, 939 (1997); Potter Stewart, *The Road to* Mapp v. Ohio *and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search–and–Seizure Cases*, 83 Colum. L.Rev. 1365, 1369 (1983); Nelson B. Lasson, The History and Development of the Fourth Amendment to the United States Constitution 51–105 (1937).

10. *See* 2 Joseph Story, Commentaries on the Constitution of the United States § 1902 (4th ed.1873) (1833) (stating that the Fourth Amendment "is little more than the affirmance of a great constitutional doctrine of the common-law"). *See also* Bradford P. Wilson, *The Fourth Amendment as More Than a Form of Words: The View From the Founding, in* The Bill of Rights: Original Meaning and Current Understanding 152, 157 (Eugene Hickok, ed., 1991) (concluding, in response to Justice Story, "[i]t is perhaps more accurate to describe the amendment as an extension of the common law"). This experience included such famed common law cases as *Entick v. Carrington*, 95 Eng. Rep. 807 (K.B.1765) and *Wilkes v.. Wood*, 98 Eng. Rep. 489 (K.B.1763) (helping to end the use of general warrants), which were well-known to the Founding generation, and to a lesser extent, the Boston writs of assistance case, in which James Otis's stirring arguments opposing the writs fueled the legal and political fires that eventually uprooted them in the colonies. *See* Stewart, *supra* note 7, at 1369–71.

marily upon phraseology and did not concern remedies such as exclusion.[11] Ultimately, then, nothing in the constitutional text or structure, or in the early history of the Fourth Amendment, indicates that its terms require the exclusion of unreasonably obtained evidence.[12]

What we know of the Fourth Amendment exclusion principle comes to us from a long line of United States Supreme Court decisions with a distinguished pedigree. In *Boyd v. United States*,[13] the government initiated a civil forfeiture proceeding against two New York businessmen who illegally imported thirty-five cases of plate glass. The defendants there claimed on appeal that the government's demand for invoices violated the Search and Seizure Clause of the Fourth Amendment and the Self–Incrimination Clause of the Fifth Amendment. Noting the relationship between the two amendments, the Court found that the compulsory production of these private papers violated the Constitution and, as a result, the evidence could not be used against the defendants at trial.[14] Importantly, the Court did not rely upon the Fourth Amendment alone for the exclusion principle it announced. Rather, ·it was the intersection between the Fourth and Fifth Amendments that required exclusion. This intersection also guided the Court's decision in *Weeks v. United States*,[15] which extended the exclusionary rationale in federal cases. There, a defendant convicted of illegal gambling moved before trial for the return of private letters he claimed were seized in violation of the Fourth Amendment. The Court agreed that the seizure there violated the Constitution and that the property had to be returned to the defendant before trial. Accordingly, because the Fifth Amendment prohibited the issuance of a subpoe-

---

11. *See* 1 ANNALS OF CONG. 754 (J.Gales, ed., 1789). *See also* Yale Kamisar, *Does (Did) (Should) the Exclusionary Rule Rest on a "Principled Basis" Rather Than an "Empirical Proposition"?*, 16 CREIGHTON L. REV 565, 571–89 (1982) (describing congressional debate on the Fourth Amendment).

12. *See* Akhil Reed Amar, *The Role of Exclusionary Rules: Against Exclusion (Except to Protect Truth or Privacy Violations)*, 20 HARV. J.L. & PUB. POL'Y 457, 459 (1997) ("The history emphatically rejects any idea of exclusion. The English common law cases underlying the Fourth Amendment never recognized exclusion. England still does not recognize exclusion.... No state court—and remember, virtually every State's constitution had a counterpart to the Fourth Amendment—ever excluded evidence in this first century."); AKHIL REED AMAR, THE CONSTITUTION AND CRIMINAL PROCEDURE 21 (1997) (stating that "[s]upporters of the exclusionary rule cannot point to a single major statement from the Founding—or even the antebellum or Reconstruction eras—supporting Fourth Amendment exclusion of evidence in a criminal trial."). The learned Justice Story offered further support for this historical analysis in an early case:

> In the ordinary administration of municipal law the right of using evidence does not depend, nor, as far as I have any recollection, has ever been supposed to depend upon the lawfulness or unlawfulness of the mode, by which it obtained.... *[T]he evidence is admissible on charges for the highest crimes, even though it may have been obtained by a trespass upon the person, or by any other forcible and illegal means.* ... In many instances, and especially on trials for crimes, evidence is often obtained from the possession of the offender by force or by contrivances, which one could not easily reconcile to a delicate sense of propriety, or support upon the foundations of municipal law. Yet I am not aware, that such evidence has upon that account ever been dismissed for incompetency.

*United States v. La Jeune Eugenie*, 26 F. Cas. 832, 843–44 (C.C.D.Mass.1822) (emphasis added).

13. 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

14. *Id.* at 630, 634–35, 6 S.Ct. 524.

15. 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

na for production of the letters, the government could not produce them at trial.

*Weeks* controlled the Court's next major decision on exclusion, *Silverthorne Lumber Co. v. United States*,[16] which involved a police raid of a lumber company's offices and seizure of its books and papers. Justice Holmes' terse opinion in that case, though, made clear what *Weeks* left ambiguous: that evidence seized in violation of the Fourth Amendment was inadmissible in federal court. The Court then continued to amplify the importance of the federal exclusionary rule in two subsequent cases, *Gouled v.. United States*[17] and *Agnello v. United States*,[18] both of which found that, pursuant to the exclusion principle emanating from the intersection of the Fourth and Fifth Amendments, a defendant need not move before trial for return of evidence in order to have it excluded. The early cases thus demonstrate that the federal doctrine of exclusion has its roots in the Constitution, though (with the exception of *Silverthorne Lumber Co.'s* holding) not in the Fourth Amendment alone. More importantly, the Court did not in any of the early cases hold that the exclusionary rule was an explicit constitutional element or constitutionally compelled remedy.

It was not until *Mapp v. Ohio*[19] that the exclusionary rule was applied against the States. In the process, four Justices found that the Fourth Amendment did in fact require application of the rule. In *Mapp*, police, looking for a man suspected of a recent bombing in the Cleveland area, searched the home of Dollree Mapp and seized four books and a hand-drawn picture that the state described as obscene. The Court held that the search violated the Fourth Amendment and that the exclusionary rule prohibited introduction of the tainted evidence at Mapp's state trial. Justice Clark, joined by Chief Justice Warren and Justices Douglas and Brennan, made several references to the intersection between the Fourth and Fifth Amendments, but ultimately concluded that the Fourth Amendment alone justified exclusion. Specifically, the plurality employed language contending that (1) the Constitution mandated exclusion; (2) the Constitution required exclusion to protect judicial and governmental integrity; and (3) the Constitution compels exclusion as a remedy and deterrent. As to the first contention, Justice Clark wrote, "that the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments is not only the logical dictate of prior cases, but it also makes very good sense." [20] As to the second contention, Justice Clark professed,

> [n]othing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.

> ... Our decision, founded on reason and truth, gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and, to the courts, that judicial integrity so necessary in the

**16.** 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

**17.** 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

**18.** 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

**19.** 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**20.** *Id.* at 657, 81 S.Ct. 1684.

true administration of justice.[21]

And as to the third contention, Justice Clark described the rule as "that command which this Court has held to be a clear, specific, and constitutionally required—even if judicially implied—deterrent safeguard without insistence upon which the Fourth Amendment would have been reduced to 'a form of words.'"[22] Justice Black supplied the fifth vote for reversal, but refused to accept the plurality's contentions that the Fourth Amendment alone required exclusion. Rather, Justice Black found exclusion to be constitutionally compelled only "when the Fourth Amendment's ban against unreasonable searches and seizures is considered together with the Fifth Amendment's ban against compelled self-incrimination."[23] Thus, even as the Warren Court ushered in the modern era of Fourth Amendment law, it still had not firmly held by majority vote that the Fourth Amendment itself required state courts to apply the exclusionary rule.

More recent Supreme Court majorities have retained the Fourth Amendment exclusionary rule. Those same majorities, however, have plainly rejected the specific constitutional propositions for which the *Mapp* plurality, and Justice Black, contended.

In *United States v. Calandra*,[24] the Court held that a witness summoned to appear before a grand jury may not refuse to answer questions on the ground that the

questions were based on evidence derived from an unreasonable search or seizure. Justice Powell's opinion for the majority explained the "broad deterrent purpose"[25] of the exclusionary rule and concluded that "the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved."[26] Justice Powell reiterated this conclusion in his majority opinion in *Stone v. Powell*,[27] which held that federal habeas corpus relief is unavailable to a prisoner claiming a Fourth Amendment violation at his trial, where the state has provided a full and fair opportunity to litigate the Fourth Amendment claim: "the rule is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any 'reparation comes too late.'"[28] The Court's modern position was most emphatic in *United States v. Leon*,[29] which established the federal "good faith" exception to the warrant requirement. There the Court, in an opinion by Justice White, stated:

> Language in opinions of this Court and of individual Justices has sometimes implied that the exclusionary rule is a necessary corollary of the Fourth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 651, 655–57, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Olmstead v. Unit-*

21. *Id.* at 659–60, 81 S.Ct. 1684.

22. *Id.* at 648, 81 S.Ct. 1684 (quoting *Silverthorne Lumber Co.*, 251 U.S. at 392, 40 S.Ct. 182).

23. *Id.* at 662, 81 S.Ct. 1684 (Black, J., concurring).

24. 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

25. *Id.* at 348, 94 S.Ct.613.

26. *Id.*

27. 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

28. *Id.* at 486, 96 S.Ct. 3037 (quoting *Linkletter v. Walker*, 381 U.S. 618, 637, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)).

29. 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

*ed States,* 277 U.S. 438, 462–63, 48 S.Ct. 564, 72 L.Ed. 944 (1928), or that the rule is required by the conjunction of the Fourth and Fifth Amendments. *Mapp v. Ohio, supra,* at 661–62, 81 S.Ct. 1684 (Black, J., concurring); *Agnello v. United States,* 269 U.S. 20, 33–34, 46 S.Ct. 4, 70 L.Ed. 145 (1925). These implications need not detain us long. The Fifth Amendment theory has not withstood critical analysis or the test of time, see *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), and the Fourth Amendment, "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).[30]

Finally, the Court clearly reaffirmed this principle most recently in *Pennsylvania Board of Probation and Parole v. Scott,*[31] which held that the exclusionary rule did not apply to probation revocation proceedings. Justice Thomas, for the Court, wrote "[w]e have emphasized repeatedly that the government's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution.... The exclusionary rule is a judicially created means of deterring illegal searches and seizures."[32] Justice Thomas continued, "[m]oreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its 'substantial social costs.'"[33] As the Supreme Court's most recent explications of the origins and purpose of the exclusionary rule, it is these modern cases that therefore control our inquiry into precedent governing the instant matter.[34]

**30.** *Id.* at 905–06, 104 S.Ct. 3405.

**31.** 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998).

**32.** *Id.* at 362–63, 118 S.Ct. 2014.

**33.** *Id.* at 363, 118 S.Ct. 2014 (quoting *Leon,* 468 U.S. at 907, 104 S.Ct. 3405).

**34.** Many state courts have also recognized the modern principle, holding that the Fourth Amendment exclusionary rule is a judicially-created prophylactic and not a constitutional mandate. *See, e.g., Motor Vehicle Admn. v. Richards,* 356 Md. 356, 739 A.2d 58, 65 (1999) (explaining "[w]e have emphasized repeatedly that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution."); *Riche v. Director of Revenue,* 987 S.W.2d 331, 334 (Mo.1999) (recognizing that the Supreme Court has held that the Fourth Amendment does not require exclusion); *Ahart v. Colorado Dept. of Corrections, Div. of Adult Servs.,* 964 P.2d 517, 520 (Colo.1998) (recognizing that the exclusionary rule is a judicially-created remedy); *State v. Turner,* 257 Kan. 19, 891 P.2d 317, 319 (1995) (recognizing same); *State v. Marquart,* 123 N.M. 809, 945 P.2d 1027, 1029 (App.), *cert. denied,* 123 N.M. 626, 944 P.2d 274 (1997) (recognizing the prophylactic, not constitutional, nature of the Fourth Amendment exclusionary rule but holding that the New Mexico Constitution *does* require exclusion); *Richardson v. State,* 841 P.2d 603, 604 (Okla.Ct.Crim.App.1992) (recognizing that the Oklahoma Constitution requires exclusion for illegal searches and seizures but that the Fourth Amendment does not); *State v. Christensen,* 244 Mont. 312, 797 P.2d 893, 896 (1990) (recognizing that the "exclusionary rule is a judicially-created remedy and not a personal constitutional right").

The modern trend severing Fourth Amendment rights from judicially-created remedies has, nonetheless, received scholarly criticism. *See, e.g.,* William C. Heffernan, *The Fourth Amendment As A Constitutional Remedy,* 88 Geo. L.J. 799, 858–59 (2000) (arguing for the reintegration of the remedy and the right); Fletcher N. Baldwin, *Due Process and the Exclusionary Rule: Integrity and Justification,* 39 U. Fla. L.Rev. 505, 539 (1987) (arguing that the *Calandra–Leon* line of cases was wrongly decided); Kamisar, *supra* note 9, at 565 (same); Thomas S. Schrock & Robert C. Welsh, *Up From Calandra: The Exclusionary Rule as a Constitutional Requirement,* 59 Minn. L.Rev. 251, 308, 309 (1974) ("when

## III.

In accordance with Fourth Amendment text, history and precedent, I would hold that the Fourth Amendment does not require the exclusion of evidence obtained as a result of an unreasonable search or seizure.[35] First and foremost, such an exclusionary rule is absent from the constitutional text. In addition, its historical background indicates that the Fourth Amendment was meant to serve, much like the common law of search and seizure that it constitutionalized, as a limitation upon intolerable state action in gathering evidence (for which, in cases of violation, other remedies exist), not as a rule governing judicial decisions to admit or exclude such evidence. Finally, modern cases have rejected the notion that the Fourth Amendment requires exclusion and have instead described the rule as a judicially created prophylactic. Based on this Fourth Amendment analysis, I would further hold that because the error in this case was non-constitutional trial error,[36] the appropriate harm analysis is that contained in Rule 44.2(b), requiring appellate courts to disregard non-constitutional errors that do not affect substantial rights.[37]

Despite the modern authority, appellant urges us to follow our decision in *Holcomb v. State*,[38] which found that the admission of illegally seized evidence was error "of constitutional dimension."[39] As such, "the error may not be declared to be harmless error unless the reviewing court is able to declare that it was harmless beyond a reasonable doubt."[40] *Holcomb*, though,

search and seizure conduct is successfully challenged as unreasonable, [the defendant] has a due process right to exclusion of the disputed evidence, because exclusion is the only concrete expression which adverse judicial review of unreasonable search and seizure can take.").

**35.** The State does not now contend that the evidence from the September 11, 1997, vehicle search was properly admitted. Rather, the State simply contends that its admission was not constitutional error. I therefore assume, without deciding, that the Court of Appeals correctly determined that the September 11, 1997 search and seizure violated the Fourth Amendment and that the fruits of that search were inadmissible at trial. *See Mapp*, 367 U.S. at 660, 81 S.Ct. 1684; Tex. Crim. P.Code Art. 38.23(a).

**36.** Appellant does not argue (nor could he, successfully) that this is structural, as opposed to trial, error. *See Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (distinguishing trial errors from structural errors by stating that structural error *is* a "defect in the framework within which the trial proceeds, rather than simply an error in the trial process itself."). Indeed, neither the Supreme Court nor this Court has ever recognized the erroneous admission of unconstitutionally seized evidence as a structural error. *See Johnson v. United States*, 520 U.S. 461,

468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *Gonzales v. State*, 994 S.W.2d 170, 171 n. 4 (Tex.Crim.App.1999). Nor does appellant suggest that this is the type of error that defies harmless error analysis. *See id.* at 171–72.

**37.** Tex.R.App. P. 44.2(b).

**38.** 484 S.W.2d 929 (Tex.Crim.App.1972), *cert. denied*, 410 U.S. 940, 93 S.Ct. 1404, 35 L.Ed.2d 606 (1973).

**39.** *Id.* at 934.

**40.** *Id.* I am aware of the Supreme Court's decisions in *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and *Chambers v. Maroney*, 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The Court held in *Bumper* that "consent" that is given only after the police have asserted that they have a warrant cannot justify a search. In *Chambers* the Court upheld the seizure and ultimate admission into evidence of ammunition from the petitioner's home. In both cases, the Court applied the "beyond a reasonable doubt" standard of harmless error review, concluding in *Bumper* that the erroneous admission of a rifle in that case was not harmless, and in *Chambers* that admission of the ammunition, if error, was harmless. However, there is nothing in those

was decided before *Calandra* and its progeny, all of which have held that the Constitution does not categorically require the exclusion of evidence obtained via an illegal search or seizure. In addition, *Holcomb* predates our modern law of error and its bifurcated harm analysis in criminal cases. It is therefore clear to us that the quoted language from *Holcomb* conflicts with modern Fourth Amendment law and with Texas criminal jurisprudence. If allowed to stand after our decision today, it would work much mischief among lower courts in cases involving the erroneous admission of evidence obtained in violation of the Fourth Amendment. I would therefore disavow that language in *Holcomb* that is inconsistent with my proposed holding in this case.

Appellant also relies upon the protections of Article 38.23 of the Code of Criminal Procedure and its application in *Brown v. State,*[41] where the Corpus Christi Court of Appeals found that the statute "cannot

be separated [from the Constitution] for purposes of applying a less exacting harmless error test" under Rule 44.2.[42] However, I disagree with the Corpus Christi court's analysis of the issue. Article 38.23 is a statutory mechanism, not a constitutional one, and any error predicated thereon must be analyzed under the standard of harm for non-constitutional errors. We have held that Article 38.22 errors are subject to the harm analysis for non-constitutional errors,[43] even though that statute was designed to protect the rights articulated in *Miranda.* If a defendant wishes to invoke the standard of harm for constitutional errors, he must find a constitutionally based exclusionary rule to do so.

Finally, appellant relies upon *Dickerson v. United States*[44] to persuade us that the exclusionary rule is constitutionally required. In *Dickerson,* the United States Supreme Court held that *Miranda's* familiar protections are constitutional in nature and thus could not be

---

cases to suggest that the question of the proper harm analysis was an issue in dispute. The Court arrived at those conclusions in a most perfunctory manner, offering no analysis of *whether* there was constitutional error. Indeed, *Bumper* relied solely on *Mapp, supra,* and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), while *Chambers* simply stated that the Court was "not prepared to differ with the two courts below" that had held that if there were error in admitting the evidence, it was harmless beyond a reasonable doubt. *Chapman,* of course, held that, "before a *federal constitutional error* can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* (emphasis added). Therefore I am forced to conclude that the *Bumper* and *Chambers* majorities thought that any error in the trial court's admission of evidence in those cases was federal constitutional error subject to the rule of *Chapman. See Fulminante,* 499 U.S. at 306–07, 111 S.Ct. 1246 (citing *Chambers* among a list of cases as authority for the proposition that "most constitutional errors

can be harmless."). Whatever vitality these cases maintain, though, only fuels the current jurisprudential disconnect in the Supreme Court because *Bumper* and *Chambers* were, like our *Holcomb* case, decided *before* the *Calandra–Stone–Leon–Scott* line of cases, which clearly held that failure to apply the exclusionary rule does not violate the Constitution. *See supra* Part II and accompanying notes. Thus, while the Court has not explicitly overruled the portions of *Bumper, Chambers* or *Chapman* at issue here, its modern Fourth Amendment cases severely undermine the Court's application of the constitutional error rule in those cases.

41. *Brown v. State,* 960 S.W.2d 265 (Tex. App.—Corpus Christi 1997).

42. *Id.* at 271.

43. *Moore v. State,* 999 S.W.2d 385, 402 (Tex. Crim.App.1999).

44. 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

superseded by a mere act of Congress.[45] The Chief Justice's majority opinion offered several reasons for the Court's ultimate conclusion. First, the Court applied the rule to the states, something it cannot do absent a constitutional violation.[46] Second, the Court stated that its conclusion about *Miranda's* constitutional status was buttressed by its prior recognition that *Miranda* challenges could be mounted in habeas corpus proceedings.[47] Third, specific language in *Miranda* itself suggests that "the majority thought it was announcing a constitutional rule." [48] Fourth, the Court in *Miranda* invited legislative action to "protect the constitutional right against coerced self-incrimination" where such action was at least as effective as the *Miranda* warnings themselves.[49] Fifth, subsequent cases have "referred to *Miranda's* constitutional underpinnings." [50] Finally, *stare decisis* weighed in favor of preserving *Miranda's* protections because they have "become embedded in routine police practice to the point where the warnings have become part of our national culture." [51]

Four factors demonstrate why *Dickerson* does not persuade me here. First, the constitutional rule that *Miranda* announced, and that *Dickerson* reaffirmed, came from a Court majority; Justice Clark's insistence upon the Fourth Amendment bases for the exclusionary rule garnered only a plurality in *Mapp.* Second, while *Miranda* violations have been recognized by the Supreme Court as cognizable on habeas corpus, violations based upon the Fourth Amendment's exclusionary rule have been found generally to be not cognizable. Third, *Dickerson* involved an act of Congress that sought to discard *Miranda's* holding by making voluntariness the sole test in determining whether to admit statements made to police by criminal defendants.[52] In the instant case, however, neither this opinion nor the Court of Appeals' opinion seeks to discard *Mapp* or the exclusionary rule. We are simply evaluating the nature and scope of the rule for purposes of applying our law of reversible error; the rule remains intact, both under precedent and Article 38.23. After all, contrary to appellant's implication, it is *Mapp's* reaffirmation of the exclusionary rule and its application against the states that have been "embedded in our legal culture," not the *Mapp* plurality's dicta concerning the constitutional basis for the rule.[53] Finally, although it is true that the

45. *Id.* at 2336, 120 S.Ct. 2326.

46. *Id.* at 2333, 120 S.Ct. 2326.

47. *Id.* at 2333 n. 3, 120 S.Ct. 2326.

48. *Id.* at 2334, 120 S.Ct. 2326.

49. *Id.*

50. *Id.* n. 5.

51. *Id.* at 2336, 120 S.Ct. 2326.

52. *See* 18 U.S.C. § 3501.

53. A possible explanation for the Supreme Court's apparent ambivalence concerning the status of the exclusionary rule is that the rule may have constitutional roots in the Due Process Clause rather than the Fourth Amendment. It may be that due process requires an effective remedy to vindicate Fourth Amendment violations. Because due process often derives its force from other rights created by law, any violation of the law, even state statutory law, could be framed as a due process violation. Nevertheless, federal courts do not conduct a *Chapman*-like analysis for non-constitutional errors. The explanation may be that due process often incorporates its own harm analysis as a component of the constitutional violation. *See,* for example, *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). If an exclusionary rule to vindicate Fourth Amendment rights is a due process requirement, then the Supreme Court would be justified in imposing such a requirement on the States, but a different harm analysis might apply, as a component of

118 ■

Fourth Amendment was not directly at issue in *Dickerson*, appellant points to nothing in either the Chief Justice's opinion or Justice Scalia's dissent that so much as alludes to *Mapp* or the Fourth Amendment exclusionary rule. Without such specific language, appellant is relegated to merely speculating that the current Court would view the *Mapp* plurality in like manner as the *Miranda* rule.

Therefore I would hold that the Fourth Amendment exclusionary rule claim must be analyzed under the harm standard for non-constitutional errors found in Rule 44.2(b). I respectfully dissent.

the due process issue. One could reasonably conclude that the standard for non-constitutional errors adequately promotes the deterrence for which the Fourth Amendment exclusionary rule was fashioned: the deterrence rationale is not implicated where the reviewing court "has fair assurance that" the tainted evidence "did not influence the jury, or had but a slight effect." A due process pedigree for the Fourth Amendment exclusionary rule may also help explain why Fourth Amendment violations are generally not cognizable on habeas corpus, just as violations of State law cannot be raised on habeas corpus simply because they could also be framed as due process violations.