**Opinion issued February 25, 2020.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00610-CR

_____

**SHAWNTAVIUS DEJUAN FREEMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from Criminal District Court No. 4**
**Tarrant County, Texas[1]**
**Trial Court Case No. 1545976R**

---

**MEMORANDUM OPINION**

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Second District of Texas to this Court. *See* Misc. Docket No. 18-9049, Transfer of Cases from Courts of Appeals (Tex. Mar. 27, 2018); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

The trial court convicted appellant Shawntavius Dejuan of seven counts of aggravated robbery and assessed his punishment as forty-six years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each count, with sentences to run concurrently. In two points of error, appellant argues that there is legally insufficient evidence supporting each count of aggravated robbery, and the trial court erred by denying his motion to suppress. Because there is no reversible error, we affirm the trial court's judgment.

## Background

Appellant was convicted of robbing seven people at gunpoint during a spree of robberies that occurred between the late evening hours of June 9, 2017 and early morning hours of June 10, 2017.

The first robbery occurred around 10:40 p.m. on June 9, 2017. Patricia Vasquez, the first victim, had just pulled into the parking lot of an apartment complex near her home when a tall black man approached her truck on the drivers' side. The man, who had a tattoo on his arm that was partially obscured by his shirt sleeve, opened her door, pointed a handgun at her chest, and demanded her purse. Patricia gave the man her purse, which contained approximately five to seven hundred dollars in cash. The man then took Patricia's keys and left. One of the patrol officers dispatched to the scene recovered Patricia's purse a half mile away. Patricia's identification was still inside, but the cash was missing. Another patrol

officer lifted two latent prints from the driver's side door handle and the top of the driver's side door frame of Patricia's truck. The two latent fingerprints and palm print were subsequently matched to those of appellant.[2]

At approximately 12:10 a.m. on June 10, 2017, Victor Manuel Mencia Barahona, Danis Estrada, and Carlos Cruz Pacheco were outside Pacheco's apartment talking when they were suddenly approached by two young black men with guns. Pacheco's partner, Isabel, and her son, Alejandro, were also present. According to Victor, one of the men pointed a gun at Carlos and Danis and took both man's phone and wallet. The other man forcefully shoved a gun against Victor's head and demanded everything he had. Victor, who was nervous and scared, gave the men his phone, car keys, and his wallet which contained a five-hundred Mexican peso note, a two-hundred Mexican peso note, a one-hundred Mexican peso note, a fifty Mexican peso note, two twenty Mexican peso notes, and five Honduran lempiras. According to Victor, the man who assaulted him was wearing a red shirt and shorts.

Isabel testified that one of the robbers put a gun to Victor's temple while the other pointed a gun at Carlos and Danis. According to Isabel, the two men took

---

[2] Freeman was also charged by indictment with robbing Juan Banda, Alfonso Montanez, and Augustine Pierda at gunpoint at approximately 11:24 p.m. on June 19, 2017 (counts Two, Three, and Four). The three men were in the parking lot of an apartment complex near the one where Patricia had been robbed. At the close of the evidence, the State waived these three counts.

Victor's, Carlos's, and Danis's wallets and phones without their consent. Isabel feared the men and she testified that Victor, Carlos, and Danis were "obviously" scared as well.

The patrol officer dispatched to the scene talked to Victor, Carlos, Danis, Isabel, and Alejandro as a group and they informed her that one of the robbers was wearing a plain dark gray t-shirt, and long, dark cargo pants and the other robber was wearing a plain blue t-shirt and dark cargo shorts.

A fourth robbery occurred at approximately 1:25 a.m. on June 10, 2017. Jeronimo Montoya Lopez, Gerardo Cerna, and Juan Lopez were talking outside Gerardo's apartment when they were approached by two young, black men. Juan Lopez, who was standing close to the door of the apartment, went inside. Gerardo ran away after one of robbers hit him in the head with a gun. One of the robbers then shot Jeronimo in his right shoulder, causing him to fall to the ground. Jeronimo was also struck in the forehead, head, and nose. After he was injured, one of the robbers took Jeronimo's wallet which contained between $950 and $1,000 dollars.

One of the patrol officers who was dispatched to the scene testified that Jeronimo was lying on the floor inside an apartment bleeding from his face and upper body area and that Gerardo had a large cut on his left ear, and a large knot on the

4

back of his head that was bleeding. The officer also located a 9mm spent shell casing in the grass next to a pool of blood outside the apartment.[3]

A fifth robbery occurred at approximately 2:17 a.m. on June 10, 2017 in the parking lot of another apartment complex. Juan Coreno had just returned from work and was walking towards his apartment when he was approached by two black men. According to Juan, the men were tall, thin, and appeared to be young. The men pointed their guns at Juan and demanded his wallet. When Juan tried to stop them from taking it, one man struck the back of Juan's head with the handle of a gun, while the other confiscated Juan's wallet, keys, and cell phone. Juan had approximately $600 dollars in his wallet. Although it was dark, Juan saw the men drive away in a car with a defective rear taillight. None of Juan's property was recovered.

A little less than four hours later, another patrol officer saw a Chevrolet Impala with a broken right rear taillight. The officer, who recalled that a four-door sedan with a right broken taillight was believed to be involved in the crime spree, initiated a traffic stop. The driver tried to flee, but he crashed the car. When the officer approached, he saw appellant standing outside the car wearing a blue shirt. Appellant and his co-defendant, Phillip Freeman, who had just exited the car, then fled the

---

[3]    At the close of the evidence, the State waived count ten in the indictment, which alleged that Freeman had robbed Juan Lopez with a firearm.

scene on foot. Both men were found hiding in the bushes of a nearby church. Appellant had a cell phone, $921 dollars, and numerous coins on his person and his co-defendant had $1,228 dollars, a cell phone, and a designer wallet.

Officers also found a 9mm round in the front passenger floorboard of the Impala, as well as multiple denominations of Mexican pesos totaling 1,060, 105 Honduran lempiras, various coins, two cell phones, clothing, a bottle of hydrocodone, purse, and an expensive watch inside the vehicle. A bail bond receipt with appellant's name on it and his co-defendant's rental agreement for the Impala were also inside the car. Officers also found various power tools, computer equipment, and a jacket in the Impala's trunk. No firearms were recovered.

After he was apprehended, a crime scene investigator swabbed appellant's hands and face for gunshot residue testing. The testing revealed that appellant had one particle consistent with primer gunshot residue on his left hand. Another officer collected appellant's clothing, which included a blue Nike t-shirt and a pair of socks, and a third officer swabbed appellant's mouth for DNA testing pursuant to a search warrant. The only item of evidence collected pursuant to the search warrant was appellant's saliva.

The clothing that appellant had been wearing were submitted for DNA analysis because they appeared to be stained with blood, along with his saliva collected by the buccal swab. The senior forensic biologist who performed the DNA

6

testing testified that a DNA profile obtained from a stain on appellant's sock contained a mixture originating from at least three individuals. The major male DNA profile matched the victim who had been shot, Jeronimo, and appellant could not be excluded as a contributor to the minor component of the mixture. She also testified that the DNA profile obtained from a stain on appellant's shirt contained a mixture from two individuals and the major male DNA profile also matched Jeronimo's DNA profile. The minor component corresponded to appellant's DNA profile. Based on this evidence, the analyst determined that the major profile obtained from the stains on appellant's shirt and sock originated from Jeronimo, one of the victims in the fourth aggravated robbery.

## Sufficiency of the Evidence

In his first point of error, appellant argues that there is legally insufficient evidence supporting each count of aggravated robbery.

### A. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a factfinder was rationally justified in finding guilt beyond a reasonable doubt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). "The jury is the sole judge of credibility and weight to be attached to the

testimony of witnesses." *Merritt*, 368 S.W.3d at 525 (citing *Jackson v. Virginia*, 443 U.S. at 319). A reviewing court determines whether a factfinder's inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 17 (Tex. Crim. App. 2007). Each fact need not point directly and independently to the defendant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Hooper*, 214 S.W.3d at 13). "We give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Jenkins*, 493 S.W.3d at 599 (quoting *Hooper*, 214 S.W.3d at 13).

The State may prove a defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Jenkins*, 493 S.W.3d at 599. A lack of direct evidence is not dispositive of the issue of guilt. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient. *Id.* On appeal, the same standard of review is used for both circumstantial and direct evidence cases. *Id.*

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly

threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a)(2). He commits aggravated robbery if, inter alia, he "uses or exhibits a deadly weapon" while committing robbery. *Id.* § 29.03(a)(2). The Texas Penal Code defines "deadly weapon" as, inter alia, "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). A defendant need not commit an aggravated robbery by himself to be guilty; it is enough that the defendant intends to promote or assist the commission of the offense and he "solicits, encourages, directs, aids, or attempts to aid" another person to commit the offense. *Id.* § 7.02(a)(2).

## B.    Analysis

### 1.    Count One

Appellant argues that the evidence is insufficient to prove that he robbed Patricia Vasquez while using or exhibiting a deadly weapon (count One). The only element of the offense he challenges on appeal is identity. Specifically, appellant argues that the evidence is insufficient to prove that he robbed Patricia because she testified that the alleged robbery was over in less than fifteen seconds and she never identified him as the robber. Patricia, however, also testified that a tall, black male between twenty-five and thirty years old opened her truck door and pointed a pistol at her chest. Patricia testified that she saw a "little bit" of a tattoo on the man's arm, coming out from underneath his shirt. She gave him her purse which contained five

to seven hundred dollars. The record also reflects that appellant, an African-American male, was twenty-one years old at the time of the robbery and has a tattoo on the top of his left arm that is visible just below his shirt sleeve. He had a large amount of cash in his possession when he was apprehended. Furthermore, three of the prints collected from the driver's side door handle and top of the driver's side door frame on Patricia's truck matched appellant. Appellant also had one particle consistent with primer gunshot residue on his left hand. Although Patricia overestimated appellant's age by three to four years, her description of the robber otherwise matches appellant. Patricia does not know appellant and there is no evidence in the record explaining why his prints were found on her truck other than that they were put there in the course of the robbery. The trial court, as factfinder, could have reasonably inferred from the evidence that appellant is the man who approached Patricia in the parking lot and left his prints on her truck when he opened the driver's side door and robbed her at gunpoint. *See Jenkins*, 493 S.W.3d at 599.

After viewing the evidence in the light most favorable to the verdict, we conclude that the circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that appellant robbed Patricia while using or exhibiting a deadly weapon. We overrule appellant's first point of error with respect to count One.

10

## 2. Counts Five, Six, and Seven

Appellant argues that the evidence is insufficient to prove that he robbed Victor Manuel Mencia Barahona, Danis Estrada, and Carlos Cruz Pacheco while using or exhibiting a deadly weapon. In addition to challenging the identity element of the offense, appellant also argues that there is insufficient evidence that Carlos and Danis were placed in fear of imminent bodily injury or death.

Victor testified that he, Carlos, and Danis were approached by two young black men with guns. One of the men pointed a gun at Carlos and Danis while the other man forcefully shoved a gun against Victor's temple and demanded his valuables. Victor, who was nervous and scared, gave the man his wallet which contained almost nine hundred pesos and some Honduran lempiras. Victor testified that the other man pointed his gun at Carlos and Danis and took each man's cellphone and wallet. One of the robbers was wearing a plain blue t-shirt. Victor was unable to identify appellant as one of the robbers and Carlos and Danis did not testify at trial.

The record reflects that appellant, a twenty-one-year-old African-American male, was wearing a blue t-shirt when he was apprehended a few hours after the robbery, and he had held a handgun recently as evidenced by gunshot residue found on his left hand. He also had multiple denominations of Mexican pesos and Honduran lempiras in his possession. The trial court, as fact finder, could have

11

reasonably inferred that the money came from Victor's wallet and that appellant was one of the men who robbed Victor, Carlos, and Danis. To the extent that there is a conflict in the record regarding the color of appellant's shirt, it is the trial court's responsibility as factfinder to resolve conflicts in the testimony and we defer to the trial court's resolution of the issue. *See Jenkins*, 493 S.W.3d at 599.

Appellant's argument that there is no evidence that Carlos and Danis were placed in fear of imminent bodily injury or death because neither man testified at trial is also unavailing. Any actual or perceived threat of imminent bodily injury will satisfy this element if "the defendant's actions are 'of such a nature as in reason and common experience is likely to induce a person to part with his property against his will.'" *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011). Moreover, "[b]y defining robbery to be theft plus *either* threatening *or* placing another in fear, [the robbery] statute demonstrates that the term 'threaten' means something other than placing a person 'in fear of imminent bodily injury or death.'" *Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006) (quoting TEX. PENAL CODE § 29.02(a)(2)). Thus, the victim does not have to personally testify that he was placed in fear of imminent bodily injury or death, when the trier of fact can reasonably infer such threat or fear based on the circumstances. *See Howard v. State*, 306 S.W.3d 407, 410 (Tex. App.—Texarkana 2010) ("Under the 'placed in fear' language of [the robbery statute], the fact-finder may conclude that an individual was 'placed in fear,'

12

in circumstances where no actual threats are conveyed."), *aff'd*, 333 S.W.3d 137 (Tex. Crim. App. 2011).

In this case, the evidence demonstrates that one of the robbers pointed a gun at Carlos and Danis and took their wallets and phones. Victor, who was being robbed at the same time, was very nervous and scared, and Isabel, who witnessed the robberies, testified that Victor, Carlos, and Danis were "obviously" scared. The trial court, as factfinder, could have reasonably inferred from this evidence that the robber had placed Carlos and Danis in fear of imminent bodily injury or death. *See Howard*, 306 S.W.3d at 410.

After viewing the evidence in the light most favorable to the verdict, we conclude that the circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that appellant robbed Victor, Carlos, and Danis while using or exhibiting a deadly weapon. *See Jenkins*, 493 S.W.3d at 599.

We overrule appellant's first point of error with respect to counts Five, Six, and Seven.

### 3. Counts Eight and Nine

Appellant argues that the evidence is insufficient to prove that he is the person who robbed Jeronimo Montoya Lopez because Jeronimo could not identify him, and none of Jeronimo's property was found in appellant's possession when he was

arrested. Appellant also argues that the evidence is insufficient to prove that Gerardo Cerna was placed in fear of imminent bodily injury or death because he did not testify at trial.

Although Jeronimo did not identify appellant as one of the robbers, there is circumstantial evidence in the record linking appellant to the robbery. Specifically, the record reflects that two young, black men with guns approached Jeronimo and two other men and that one of the black men shot Jeronimo in the shoulder and took his wallet which contained between $950 and $1,000 dollars. The record also reflects that appellant, an African-American male, was twenty-one years old at the time of the robbery and he had $921 dollars in his possession when he was apprehended. A 9mm spent shell casing was found in the grass next to a pool of blood outside the apartment where Jeronimo was shot, and an officer found a 9mm round in the front passenger floorboard of the Impala. Furthermore, the record reflects that Jeronimo was bleeding heavily from his injuries and his DNA was found on the sock and shirt that appellant was wearing when he was apprehended. Appellant argues that we should disregard this DNA evidence because the trial court erroneously denied his motion to suppress the seizure of his saliva. We consider both properly and improperly admitted evidence when conducting a sufficiency review. *See Jenkins*, 493 S.W.3d at 599. Even if we were to disregard this evidence, however, it would not alter the outcome of our analysis because there is other evidence linking

14

appellant to the items of clothing on which Jeronimo's DNA was found, including the fact that appellant was wearing the shirt and sock with Jeronimo's DNA when he was arrested.

With respect to Gerardo, as previously discussed, the victim does not have to personally testify that he was placed in fear of imminent bodily injury or death, when the trier of fact can reasonably infer such threat or fear from the circumstances. *See Howard*, 306 S.W.3d at 410. In this case, the evidence reflects that Gerardo ran away after one of the robbers struck him in the face with a firearm, which caused a large cut on his left ear and a large knot of the back of his head.

After viewing the evidence in the light most favorable to the verdict, we conclude that the evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that appellant robbed Jeronimo and Gerardo while using or exhibiting a deadly weapon. *See Jenkins*, 493 S.W.3d at 599.

We overrule appellant's first point of error with respect to counts Eight and Nine.

### 4. Count 11

Appellant argues that the evidence is insufficient to prove that he robbed Juan Coreno while using or exhibiting a deadly weapon because Juan was unable to identify appellant as one of the robbers and, although he noticed that one of the rear

15

tail lamps of the automobile that the robbers used to escape was lighter than the other, Juan never identified any particular vehicle as the getaway car.

The evidence reflects that Juan was robbed by two young, black men with guns. When Juan tried to prevent them from taking his wallet, one of the men hit him on the back of his head with the gun and took Juan's keys, phone, and his wallet which contained approximately $600 in cash. When the robbers left, Juan noticed that one of the taillights on the getaway car was defective. The record also reflects that appellant, an African-American male, was twenty-one years old at the time of the robbery and had over nine hundred dollars in cash in his possession when he was arrested four hours later. The Impala that appellant and his co-defendant had been driving had a broken right rear taillight which was consistent with Juan's description of the getaway vehicle. Appellant had one particle consistent with primer gunshot residue on his left hand. The trial court, as factfinder, could have reasonably inferred from the evidence that appellant is one of the robbers who approached Juan and took his wallet and other valuables. *See Jenkins*, 493 S.W.3d at 599.

After viewing the evidence in the light most favorable to the verdict, we conclude that the circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt, that appellant robbed Juan while using or exhibiting a deadly weapon. We overrule appellant's first point of error with respect to count Eleven.

16

**Motion to Suppress**

In his second point of error, appellant argues that the trial court erred by denying his motion to suppress because Officer Ortiz's affidavit did not provide probable cause to obtain his saliva because the affidavit contained conclusory statements that did not link him to the offenses detailed in the affidavit.

Even if the trial court abused its discretion by not granting the motion and suppressing the admission of evidence related to the buccal swab obtained from appellant, appellant is not entitled to relief on this ground unless the error was harmful. When a trial court erroneously denies a motion to suppress and admits evidence obtained in violation of the Fourth Amendment, that error is constitutional and subject to the harmless error analysis under Texas Rule of Appellate Procedure 44.2(a). TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). This standard requires an appellate court to reverse the trial court's judgment of conviction unless it "determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The primary question is whether there is a "reasonable probability" that the error might have contributed to the conviction or punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

When conducting the harmless error analysis, an appellate court should not focus on the propriety of the outcome of the trial. *Love v. State*, 543 S.W.3d 835,

17

846 (Tex. Crim. App. 2016) (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). Rather, it should calculate as much as possible the probable impact of the improperly admitted evidence considering the existence of other evidence. *Love*, 543 S.W.3d at 846. An appellate court considers the nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight probably placed on the error, and whether declaring it harmless would be likely to encourage the State to repeat the error. *Id.* (citing *Snowden v. State*, 353 S.W.3d 815, 821–22 (Tex. Crim. App. 2011)). The record must be evaluated in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Love*, 543 S.W.3d at 846 (quoting *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989)). Error does not contribute to the conviction or punishment if the verdict would have been the same even if the erroneous evidence had not been admitted. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (citing *Neder v. United States*, 527 U.S. 1, 15–18 (1999)).

Initially, we note that there is ample evidence of appellant's guilt in the record, as detailed in our discussion of the background facts and his sufficiency challenge. More importantly, the record reflects that the admission of appellant's DNA profile that was obtained from his saliva played a minor role in this case. The important DNA evidence in this case was not that of appellant but was instead, the DNA profile of victim Jeronimo. The only purpose for the admission of appellant's DNA was to

link appellant to the two articles of clothing with Jeronimo's blood stains on them. There is other evidence in the record, however, directly linking appellant to the sock and blue t-shirt. Namely, appellant was wearing these items of clothing when he was arrested and when he was photographed at the police station he was still wearing the blue t-shirt. Detective Jensen testified that she collected appellant's blue t-shirt and socks, which were the same items the forensic biologist tested for DNA. The State did not need appellant's saliva to link him to the sock and shirt. We further note that the State did not emphasize the DNA profile obtained from appellant's saliva, and the trial court likely placed no weight on the testimony.

Viewing the record in a neutral, impartial, and even-handed manner, we conclude beyond a reasonable doubt that the trial court's error, if any, in not suppressing the DNA results obtained from appellant's saliva was harmless. *See* TEX. R. APP. P. 44.2(a); *Love*, 543 S.W.3d at 846.

We overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

19

Do not publish. TEX. R. APP. P. 47.2(b).